STAPLES, J.,
delivered the opinion of the court.
The defendant was convicted in the county court of Henrico of selling and offering to sell in said county certain machines known as the “Singer sewing machine,” without having first obtained a license according to law, and was sentenced to pay a fine of $50. To that judgment he applied for and obtained a writ of error from the circuit court; which affirmed the judgment of the county court. A writ of error *was awarded by this court to the judgment of the circuit court.
On the trial in the county court it was proved that the Singer manufacturing company is a corporation incorporated by the laws of New Jersey; that it has a place of business in the city of Richmond where it keeps a stock of sewiijg machines; that the company is duly licensed by the State of Virginia, having paid a license tax of $322; and is therefore a resident merchant of this State, and taxed as such; and the defendant is its authorized agent, and as such has sold and delivered at the time of sale, since May 1, 1880, machines to divers citizens of Hen-rico county. The question before us, is whether the defendant upon this state of facts was properly convicted of the offence for which he was indicted?
In determining this question it will be necessary to examine the provisions of various statutes relating to the assessment and collection of the public revenues. In one or more of these statutes it is expressly declared that every license granting authority to any person- to engage in any business, employment, or profession shall designate the place of such business, employment, or profession, unless otherwise expressly provided. And engaging in or exercising any such licensed business elsewhere than at such designated place is declared to be without license. And no person is allowed the privilege of selling throughout the State under one license, except by special provision of law. §§ 88-94, pp. 30-31, Va. Revenue Laws, 1877. These provisions, it will be observed, are very broad in their' operation, and apply as well to merchants as to the o.wners of articles or machines manufactured in this State, or in other States and Territories. A careful examination of the revenue laws fails to show any enactment allowing either of these classes of persons *the privilege of selling elsewhere than at their designated places of business, unless, it be the statutes relating to sample merchants, found in the thirty-fourth and thirty-fifth sections, pp. 61-62 of the Revenue Laws. These sections declare that any person who shall sell or offer to sell any description of goods, wares or merchandise by sample, card, description or other representation, verbal or otherwise, shall be deemed a sample merchant. Any person engaging in such business must obtain a license which confers upon him the privilege of selling anywhere in the State. He may under his license appoint one agent or salesman to sell, in his place. But for any additional agent or salesman employed to sell, he must pay an additional tax of $50. It is also provided that nothing in either of the sections shall be so *635 construed as to prevent any resident. merchant or manufacturer from exhibiting a specimen of his goods, wares or merchandise anywhere in the State, or the exhibition of a sample of any property which the person exhibiting is authorized to sell without a sample merchant’s license. And at the conclusion of the thirty-fifth section is the following provision: “Nothing in this or the preceding section (34th) shall be construed to require any licensed merchant or manufacturer who has paid a license tax of not less than one hundred dollars to pay an additional tax for selling or offering to sell by sample, either by himself or his agents.
Under this provision the licensed merchant or manufacturer who pays a tax of one hundred dollars may sell by sample himself, or he may sell by agents. It is very true the language quoted does not of itself confer express authority so to sell, but is rather in the form of an exception or proviso. It must be remembered, however, that any person is privileged to sell goods, wares and merchandise until prohibited by *some statutory enactment, and but for the thirty-fourth and thirty-fifth sections any person may sell by sample to any extent. When therefore the licensed merchant . or manufacturer is excepted out of the operation of these sections he stands precisely as though they had never been adopted. If these sections do not apply to him there is no law that does, and he may sell by sample himself in any part of the State, or he may appoint any number of agents to sell for him, without the payment of any additional tax. In this respect he stands upon much higher ground than the mere sample merchant, who for every additional agent is required to pay a tax of fifty dollars.
This discrimination if it may be so termed, is founded upon sound considerations of public policy. The sample merchant is generally a non-resident, and beyond- the small tax he pays into the treasury, contributes nothing to the wealth and resources of the State, whilst he is constantly withdrawing a large amount of capital from our midst as well as injuriously affecting domestic trade and enterprise. On the other hand the resident .merchant pays not only the tax upon his business but generally he pays upon other subjects of taxation necessarily employed in that business, and at the same time he is a substantial contributor to the wealth of the State in time of peace, and her strength in time of war. We repeat therefore the statutes already cited have made a distinction between a licensed merchant or manufacturer who pays a tax of one hundred dollars and the mere sample merchant. It was conceded by the attorney-general, that this distinction has been recognized and acted upon by the several departments of the government since 1874, until very recently; and although the legislature has been repeatedly in session in the meantime, it has never interfered to change the rule of construction so *adopted. We think the courts ought not to do so, but leave the whole matter to the legislature where it properly and rightfully belongs.
We are now to enquire what are the rights and privileges of a sample merchant; for whatever they are, they may be exercised by the licensed merchant or manufacturer who has paid a tax of one hundred dollars. The thirty-fourth section defines a sample merchant. He is one “who sells or offers to sell any description of goods, wares or merchandise by sample, card, description, or other representation, verbal or otherwise, or-any agent for the sale or collection of orders by sample or description list, such as is prescribed by the C. O. D. supply company of America, or any similar company.” The word “sample, both in its legal and popular acceptation, means that which is taken out of a large quantity as a fair representation of the whole — a part shown as a specimen.” Indeed upon the well-known maxim of nosci-tur a sociis, the word “sample” in its connection with “qard” or “representation,” shows what was intended by the legislature. The history and the reasons of the legislation contained in the thirty-fourth and thirty-fifth sections are perfectly well known.
The object was to provide a remedy for a constantly increasing evil growing out of the influx of multitudes of agents and salesmen from the commercial cities of the north traversing the State with sample cards and descriptive lists, and receiving orders to be filled by their respective employers. This traffic yielded no revenue to the State, and was deeply injurious as well as unjust to the licensed merchant and manufacturer. It is hardly to be supposed that the legislature m providing a remedy for this abuse intended to confer new privileges upon the licensed merchant, and to allow him to sell as a merchant or pedlar his goods by retail *in any part of the State. If the right to sell by sample carries with it the right to sell and deliver as a retail merchant or as a pcdl.ar, every licensed merchant or manufacturer who pays a tax of $100 may establish a place of business in each county in the State, and there retail his goods; or he may appoint any number of agents to peddle his goods from place to place, and sril them without restraint or limitation. The result would be that a license to sell at one place in effect confers authority to sell at any other place according to the inclination or interest of the grantee of the license. A oer-son licensed as a merchant to sell goods at a particular place may of course receive orders from his customers and others in any and every part of the State, may fill these orders and forward the goods accordingly. It is the constant practice, and no one presumes to question its legality. And so a merchant or manufacturer paying a tax of $100 may send his agents into any county supplied with samples, cards or descriptive lists, and may receive and fill orders for furnishing and delivering goods so sold by sample, card or description.
And while it is conceded to be no easy task precisely to define when the privilege of the *636 sample merchant begins, or when it terminates, it is very clear, that a person, whether he be owner or agent, who has a place of business in a county or town, and there sells and delivers the articles at the time of sale, or a person who carries his goods from place to place, and sells and delivers the article at the time of sale, is not selling by sample, card or description. Such a person may be a retail merchant or a pedlar; but he is not a sample merchant. And this is precisely what was done by the defendant. Either .he had a place of business in Henrico county, where he kept the machines for sale and delivery at the time of sale, or he carried *them from place to place and sold and delivered whenever he would find a purchaser. In either case he was not selling by sample. This proposition seems to be so free from difficulty it would have been passed by without discussion but for the earnest and elaborate argument of the learned counsel for the defence.
It is claimed, however, that although the defendant may be guilty of violating the statutes relating to sample merchants, or the statute relating to pedlars, he cannot be convicted in this case, because he is not indicted under those statutes but under what is known as the forty-fifth section of the Revenue Laws 1878, page sixty-five. That section provides that any person who shall sell, or offer to sell the manufactured articles or machines of other States or Territories unless he be the owner thereof and taxed as a merchant, or who shall take orders therefor on commission or otherwise, shall be deemed to be an agent for the sale of manufactured articles of other States and Territories. The ground taken by defendant’s counsel, “that this section contains an express exception in favor of the owner who has paid a license tax — that this exception creates an inevitable implication that such owner may sell; and if he may sell, his agent may do so, under the decision in Myerdock’s case, 36 Gratt. 988.” The argument is plausible but it is not sound. In the first place the forty-fifth section was not designed to confer rights and privileges upon any class of persons, either the owner or venders of goods, wares and merchandise. Those rights are defined by other statutes. The sole object of the forty-fifth section was to restrain — to provide some remedy for an evil growing out of the sale in this State of articles manufactured in other States brought here by persons who were the agents of others; or if they were the owners, paid no tax for the privilege. All such persons t«re denominated *agents by the statute, and are required to take out license in each county in which they sell. But if the construction of defendant’s counsel be correct — if the forty-fifth section is to be read as of itself conferring upon the owner who has paid a merchant’s tax authority to sell, we have this anomalous condition of things. Under the. thirty-fourth and thirty-fifth sections a resident merchant who pays a $100 tax may sell by sample; but the payment of the tax is a condition precedent to the exercise of the privilege. According to the interpretation now sought to be put upon the forty-fifth section, any licensed merchant who is the owner, whether he has paid $30 or $100, may sell not merely by sample, but he may sell by retail as a merchant or as a pedlar,' in every county and town in the State, without limit or restraint. The result is that whilst the payment of $100 tax is necessary in order to sell by sample under the forty-fifth section according to the present pretension, any resident merchant who is the owner of the goods he offers for sale, may. sell without limit as to time or place. It is impossible that a construction which leads to such consequences can be correct.
It is very true, as was held by this court in Myerdock’s case, whenever the merchant is authorized to sell at a particular place he may appoint an agent to sell there for him. But it is equally true, that the merchant cannot confer upon an agent authority to sell where he himself cannot lawfully sell. If therefore the Singer manufacturing company cannot, under its Richmond license, sell in Henrico except by sample, it cannot of course appoint an agent to sell there in its place. So that at last we are brought back to the enquiry, “What are the privileges of a resident merchant who has paid a tax of one hundred dollars? These privileges, whatever they may be, are defined, *not by the forty-fifth section, but by other provisions already cited. But although the owner is not punishable under the forty-fifth section, because he is expressly excepted from its operation, there is no such exception in favor of any other person; not even an agent of the owner. For whilst the law protects the agent in selling where the principal may lawfully sell, it does not so protect him in selling where the principal himself is prohibited from selling. It is very true also that the forty-fifth section is silent as to the mode and manner of selling. It is a matter however of no importance. All manner of selling is prohibited, unless the party can show that the privilege is conferred upon him under other statutes — as for example that he is a merchant licensed to sell at the place of sale, or that he is a resident manufacturer, or that he is authorized to sell by sample and is merely exercising that privilege. It seems to us this is the only construction that can be given to these revenue laws, unless we mean by a sort of judicial legislation to change the whole policy of the legislature for the last thirty years, with resoect to the licensed business of the State. We are therefore of opinion the defendant was properly convicted under the forty-fifth section; and the county court did not err in so holding.
It has been further insisted, that the machines sold by the defendant as agent of the Singer manufacturing company, were manufactured by the company as assignees under a patent of the United States; and that no State can consistently with the Federal Constitution and the laws of the United States, impose burdens, by taxation or otherwise upon the privilege of selling such ma *637 chines within its limits. When we consider the number and variety of patented articles sold throughout the country by the paten-tees or their assigns, it is obvious that if the proposition contended *for be correct the States will be deprived of an immense amount of revenue for the support of their governments and the conduct and management of their domestic economy and administration. The learned counsel produced no authority in support of this doctrine. The only decision cited having any bearing on the subject is that of the supreme court of the United States in Patterson v. State of Kentucky, reported in Albany Law Journal February 22, 1879, p. 156. The only question in that case was whether a State may provide for the inspection of illuminating oil patented by the government, and may prohibit the sale of any that will not stand the prescribed test. It was held that the prohibition was a police regulation within the power of the State. That case therefore did not call for any decision of the precise point involved here. But Mr. Justice Harlan, who delivered the opinion of the court, drew a very just distinction between the right of property in the physical substance which is the fruit of a discovery or invention, and a right in the discovery or invention itself. The right to sell the oil itself is not derived from the patent, but exists independent of it. The right which the patent primarily secures is the exclusive right in the discovery or invention, which is an incorporeal right. The enjoyment of that right may be secured and protected by the Federal government against all hostile State legislation; but the tangible property which comes into existence by the application of the discovery is not beyond the control, as to its use, of State legislation simply because the inventor acquires a monopoly in the discovery.
Applying these principles to the present case, the patentee has the exclusive right to use or sell the “Singer sewing machines.” No one has the right to use the product of his labors except with his consent. He has a monopoly in the invention and this is the sole ^operation and effect of the patent. But this does not prevent the States in the exercise of their just powers of taxation from taxing the business of selling the machine which is the subject of the invention. If the State attempts by a system of hostile and discriminating legislation to destroy the entire value or use of the discovery or invention, a very different question would then be presented. But so long as the taxation imposed is just, and reasonable, and accords with the general burdens imposed upon like subjects of taxation, there will be no just ground of complaint. As was said by Chancellor Kent in Livingston v. Van Ingen, 9 Johnston R. 582, “That species of property must likewise be subject to taxation and to the payment of debts as other personal property. The national power will be fully satisfied if the property created by patent be for the given term enjoyed and used exclusively, so far as under the policy of the several States the property shall be deemed fit for toleration and use. There is no need of giving this power any broader construction in order to attain the end for which it was granted; which was to reward the beneficienl efforts of genius and to encourage the useful arts.”
Under the Virginia statutes it is not pretended there is any discrimination against patentees residing in this or other States, or against their assignees. The tax is imposed equally upon the sale of all articles or machines manufactured in this or other States and Territories whether patented or not; and no complaint is made that the tax is burdensome or oppressive. It was said by the attorney-general in the argument here that the patent granted to the inventor of the “Singer sewing machine” had expired, and had not been renewed by Congress. If this be so, as no doubt it is, there can be no pre-tence or claim of right in the present company to the exclusive use or sale of the *machines, or to an exemption from taxation by the State.
And lastly, it is claimed that the statute under which the defendant was convicted is in conflict with the power vested in Congress to regulate commerce among the several States; and is therefore unconstitutional and void. The learned counsel for the defendant laid no particular stress upon this point, and clearly attached no great importance to it. The Singer manufacturing company, as far as appears, paid the tax imposed on resident merchants without objection or protest, and was only licensed as such. Under this license it claims the right to sell its machines in any part of the State; and this whole controversy grows out of the assertion of that right. Upon the trial in the county court its claim for exemption was based upon two grounds: First, that the company having taken out a merchant’s license had the right under it to sell by its agents in the county of Henrico or elsewhere; and secondly, that as assignee of the patentee it could sell independently of any restriction of limitation imposed by the laws of the State. Tt does not appear that any question was raised as to the constitutionality of the tax in other respects, or that the pleadings or evidence were framed with reference to the point now presented in the argument. That point seems to have been an after thought, first raised in the circuit court, and now renewed in this court. Without entering into any detailed argument on the subject, we think there is no just ground for saying that any discrimination is made bv the statutes of this State against the products or citizens of other Slates. As was said by the supreme court of the United States in Woodruff v. Parham, 8 Wall. U. S. R. 123, “there is no attempt to discriminate injuriously against the products of other States or the rights of their citizens, *and the law is not therefore an attempt to fetter commerce among the States, or to deprive the citizens of other States of any privilege or immunity possessed by resident citizens. For whether the goods be manufactured here or manufactured abroad, their sale without a license is *638 equally prohibited, and the same tax is to be paid in each case for the privilege of selling. It is very true that the forty-sixth section contains an exception in favor of resident manufactures. But this exception is not founded upon any idea of discriminating against non-resident manufacturers, but upon the policy of holding out inducements to the investment of capital and the employment of labor in that branch of business. When we consider the practice, energy and skill so necessary in all the various processes required for the production of manufactured articles, the great outlay of capital and labor necessary; the accessions they bring'to the wealth and power of a community, and the taxes imposed upon the property employed in that branch of business, it is not at all surprising that many of the States have allowed exemptions from taxation upon the article whilst it is the hands of the manufacturer. It might with as much_ propriety be contended that exemptions in favor of literary and benevolent associations constitute unjust discriminations against non-residents. If the resident manufacturer pays no tax upon the sale of his fabric, he pays more than an equivalent in the burdens imposed uponthé property real andpersonal often employed in the business. This exception is nothing new in Virginia. It has prevailed here for nearly forty years, without being called in question. Ño decision of the supreme court of the United States, or of any court has been cited, which holds that such an exemption is an unconstitutional discrimination against non-residents. Most *of the cases are cited in Howe Machine Company v. Cage recently decided by the supreme court of the United States and not yet reported. But none of them involve the precise question arising here. This court has therefore no sort of difficulty in sustaining a system of legislation sanctioned by time, the usage of States and the principles of equity and justice.
Judgment affirmed.